[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated July 6, 1998 the plaintiff wife, Lynn Marie Sobowitz commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown, custody, child support, alimony and other relief. The defendant husband, Joseph S. Sobowitz appeared through counsel. On January 5, 1999 the court appointed counsel for the minor child, Joseph Michael CT Page 13618 Sobowitz, born August 10, 1992. The parties appeared for trial and presented testimony and exhibits on June 30, July 1, 2, 3, 13, 14 and August 24 and 31, 1999.
As stated above the Court was required to devote eight trial days to hear all of the oral testimony from 24 witnesses (including deposition testimony of an out of state witness) and review mounds of exhibits. The Court file also indicates that ten pendente lite hearings were held involving issues of temporary custody, visitation, support, payment of expenses, attorneys' fees, contempt, etc. The Court has previously found the defendant husband in contempt of various court orders concerning payment of household and family bills, use of families residence, harassment of spouse, discussion of the divorce with child, failure to sell a motorcycle and coin collection (court order September 11, 1998), violation of an order regarding place and conduct re: visitation (court order October 8, 1998), violation of a court order concerning visitation with a thirty day jail sentence, execution of the sentence suspended on February 11, 1999.
The Court is faced with the task of determining who should have custody of the minor child. This sole issue is the driving force fueling the mutual animus and hostility between the parties. The Court has sifted through the evidence in determining whether the plaintiffs or defendant's positions are persuasive and/or truthful concerning the issue of custody and all other matters to be decided by the Court. The Court after hearing the testimony and reviewing the exhibits and analyzing the oral argument of the parties on August 31, 1999 hereby makes the following findings of fact.
The plaintiff wife (whose maiden name was Ramer) married the defendant husband on October 18, 1985 at Hartford, Connecticut. She has resided continuously in the State of Connecticut for one year next preceding the date of the filling of this complaint. All statutory stays have expired. The parties have one minor child born to the wife since the date of the marriage, issue of the marriage: Joseph Michael Sobowitz born August 10, 1992. No other minor children have been born to the plaintiff wife since the date of the marriage. The Court further finds that no state or municipal agency is contributing to the support of the parties and/or their child.
The plaintiff wife is 44 years old and has enjoyed the status of a nurse for the past 20 years. She received her initial CT Page 13619 nursing diploma after completing her training from 1973 to 1976. She returned to school and received her bachelors degree from the University of Hartford with a 4.0 academic average. She has been consistently employed by Hartford Hospital as a nurse in the operating room. She presently enjoys the title and duties acting nurse manager of the operating room with a staff of eight under her control. Her job duties require her to collaborate with hospital departments, coordinate patient care, prepare staff and instrumentation. She further acts as a resource and teacher for new shift staff members. She also is in charge of coordinating the surgeons and new procedures in the operating room. She presently works an eight hour day from 6:45 a.m. to 3:30 p. m. Her weekly income is $1,092.00 per week. She has accumulated pension benefits at Hartford Hospital which have recently been converted to a cash balance plan as of January 1, 1999. The present nature of said pension plan is $91,548.01 (plaintiffs Exhibit V). The parties have been married for 14 of the 20 years during which such benefits were accumulated. The plaintiff, other than the stress and anxiety from the marital discord, enjoys good emotional and physical health.
The defendant husband is 52 years old and has graduated from college in 1980 with a bachelors of arts degree majoring in fine arts. The defendant was in the U.S. Naval Service from June 19, 1965 to July 19, 1968. From 1968 the defendant worked in the food service industry as an iron worker/laborer and later as a car salesman. While working as a car salesman in the mid-1980's at Burnside Motor's the defendant decided to change professions with the consent of his wife. He moved into management at Schaller Motors in 1987 and worked as a finance and insurance manager on commissions only. After one year, his employer decided not to renew his employment due to inadequate job performance. One of the principals of Schaller Motors inquired as to the interest of the defendant in starting a leasing company. The defendant opened a leasing business with two principals of Schaller Motors. He drew a salary as general manager of $900-$1,000 per week. This business venture failed after one year because of lack of profits. The defendant then ran an unsuccessful wholesale automobile business from 1989 to 1991 which also closed because of the defendants lack of experience and inability to make a profit. From 1992 to 1993, the defendant opened up a credit consulting business with a friend that also proved unsuccessful. From 1993 to the present, the defendant moonlighted as a certified pool instructor, pool tournament director, pool pro shop operator, bartender and an odd jobs man working for cash. CT Page 13620 From 1994 to 1997, the defendant (with various individuals and partners) attempted to create an upscale pool room business of sufficient size to hold major pool tournaments suitable for sport television.
A great deal of time, testimony and exhibits were directed to the proof of the time and effort (or lack thereof) spent by the defendant in creating his dream business. The evidence shows that the defendant has not been successful in establishing his pool room business. He has reported no income to the IRS since his last business venture as a credit counselor. Since the start of the dissolution of marriage case, defendant used money from the court ordered sale of his motorcycle and/or savings to enroll at Kripalu, a meditation center in Massachusetts that teaches individuals to deal with life's stress and pressure. Upon return from Kripalu the defendant has been diagnosed by his psychologist, Dr. Pellett, as suffering from an adjustment disorder with mixed anxiety and depression also known as attention deficit hyperactivity disorder (Defendant's Exhibits C, D). He was later diagnosed as suffering from a major depressive disorder, a diagnosis made by Carol Whelan, a nurse practitioner of the Veteran's Hospital. Said diagnosis was confirmed by Dr. Werner, a staff psychologist. The defendant presently is employed by the Veteran's Administration in a clerical position earning $150.00 per week.
The defendant does not challenge the earnings and/or earning capacity of the plaintiff. The Court finds that the plaintiff has an excellent work record and is working to her earning capacity. The plaintiff contends that the defendant is not working to his earning capacity. She further contends that he is faking his emotional condition to position himself to claim alimony due to his inability to work. She also claims he fakes his emotional illness and physical condition so he can claim that he has many hours available during the week and every weekend to exercise custodial rights.
The Court concludes that based upon the evidence the defendant is presently suffering from depression. He is presently taking medicine prescribed by the nurse practitioner for depression (e.g., olanzapine, effexor, valium). He is also taking medication for his right knee pain. The Court concludes that he is presently working to capacity due to his present psychological condition. The Court further finds that his right knee condition has no effect on his present or future income. The Court further CT Page 13621 concludes that Carol Whelans prognosis as to recovery to full earning capacity is credible and incorporated by the Court in its orders re: child support. The Court finds that the defendant has the capacity to earn $26,000 within six months based upon testimony of Carol Whelen and Dr. Pellett.
The issue of credibility of the plaintiff and defendant concerning the breakdown of their marriage and daily involvement with the minor child leaves the Court with little insight as to how and why these two individuals have stayed married and cohabited under one roof. The plaintiff claimed that her husband repeatedly called her a "fat ass", "stupid", and other names demeaning her in front of her family, friends and parents of her sons sports mates. The defendant denied this conduct. The Court finds his testimony on this issue is not credible. The Court concludes that the testimony of the plaintiff and her witnesses are credible as to demeaning conduct of the defendant.
The defendant also contends that he is the parent since 1991 (when he last had a regular job) who met the daily needs of his son because his wife worked full time and went to school at night. The plaintiff contends that the defendant did not perform the tasks and spend the amount of time with their child that he claimed. The Court heard from numerous witnesses concerning the care of the child by either parent. The Court again finds the testimony of the defendant and his witnesses to be outweighed by plaintiff's positions re: care of the child. The defendant argued that he could not work at a regular job during the years he attempted to create his pool hall business. The parties also agreed that the child spent the day time hours in daycare. The defendant, if he did in fact spend the majority of the work day on his project, he could not have cared for his child during the day, thus resulting in the child's placement at the daycare center. Also if he did spend the time he said he did working on his future business plans, he would not have been available to care for his son. The Court finds that the defendant was not the primary caretaker of the child. The Court further finds that the plaintiff made the day care arrangements for the child and attended to the needs of her child after work, i.e., relied on her family and friends concerning care of the child. While the Court finds that the defendant loves his child and has increased his involvement with the child, he is not the primary caretaker.
Based upon the facts that exist at the time of the conclusion of the trial, the Court finds that it is in the best interests of CT Page 13622 the minor child that sole custody of the minor child be granted to the plaintiff subject rights of visitation set forth below. Conn. General Statute § 46b-56, Dubicki v. Dubicki,186 Conn. 709 (1982). As indicated above, the Court concludes that the plaintiff is best suited to care for the needs of her son. She enjoys a secure well paying job at Hartford Hospital. She and not the defendant had made arrangements for child care during weekly work hours and has met the needs of the child with the assistance of the defendant and her family. The plaintiff, who always wanted a child, met all of the needs of the child until he became self-sufficient at the approximate age of four when the defendant became fixated in his involvement with his son. Furthermore, the defendant is not only financially unable to care for his son but is also emotionally unable to interact with his wife to foster the best interest of the child.
The plaintiff, however, is not totally without fault for the loss of family income as a result of her husband's decision to pursue his dream and to moonlight for money during the years between his last business venture and failure to establish his pool hall business. She is partially at fault for the economic breakdown of the relationship caused by the lack of funds to meet the family needs and expenses in allowing and encouraging the defendant to pursue his dream. The Court finds that the plaintiff agreed with the defendant that he could pursue his dream while working as a pool instructor, pool pro shop operator, tournament director and bartender. The plaintiff further did not object to the defendant's career moves from car salesman, finance manager, credit consulting business, etc. The plaintiff, who enjoyed living in her new home and her profession apparently co-existed with her spouse and his business dreams and presently suffers from the financial dilemma facing both parties.
As to issues of assets, the Court finds that the defendant brought substantial assets into the marriage. He had approximately $50,000 and his automobile at the time the parties married. The plaintiff had maxed out her credit cards and had to take out a consolidation loan with the assistance of her father prior to marriage. In April 1985, the defendant purchased a condo for $68,000 with a down payment of $13,600 and a mortgage for $54,400. The defendant paid off the plaintiffs remaining bills when they moved in together. They pooled their money to pay expenses, mortgage, etc. commencing in October 1985 when they were married. CT Page 13623
The parties decided to buy a home because it was the plaintiffs dream to have a house. The condo was paid off in five years. They had money in the bank and were debt free when the house was purchased in 1993. The defendant received gifts totaling $85,000 from his mother from the sale of her home and transfer of a C.D. The defendant used the funds ($40,000-$50,000) in constructing the home and the balance of $35,000 to purchase and customize a Harley Davidson motorcycle which was sold during the pendency of this action by court order. The parties purchased their home for $210,000 with an adjustable rate mortgage of $57,500. The down payment of $52,500 came from funds the defendant received from his mother plus some funds from joint savings. The condo was sold in December of 1993 for $92,000 and was mortgage free at the time of the sale.
The plaintiff during the marriage obtained funds from her family in the amount of $8,682 (plaintiffs Exhibits 6, 7, 8). She also deposited her funds from employment in the joint accounts for payment of family bills and expenses with the parties were residing together prior to the institution of this proceeding.
The plaintiffs earned income, since the date of the marriage, greatly exceeded the income of the defendant. He last made reportable income when he worked as a car salesman and finance manager. After his wholesale car business and credit consulting business ended in 1993, he didn't perform regular work. The joint tax returns for 1994-1997 (plaintiffs Exhibits 2, 3, 4, 5) showed no earned income reported by the defendant. The testimony of the parties further indicate that no earned income was reported by the defendant for calendar 1998 as well. While the parties both agree the defendant did earn money from moonlighting from 1993 to 1997, the Court cannot find the amount due to lack of substantiation by either party.
As to financial issues, the Court has considered the assets brought into the marriage by the parties, the inheritance and/or gifts from family members, the funds spent on husband's various business ventures and the plaintiffs acquiescence and/or approval of the defendants pursuit of his dreams to start a business of his own. The Court has also taken into consideration the defendant's present emotional health, his present and future earning capacity and the defendants accumulation of retirement benefits while employed at Hartford Hospital. The Court is also mindful of the defendant's unproven claim of infidelity of his wife with a member of the Hartford Hospital staff as a ground of CT Page 13624 the breakdown of their marital relationship. Witnesses were called by the plaintiff and court, time spent in the plaintiffs attempt to prove a negative. The Court finds that the plaintiff was not unfaithful to her husband during the time before the parties separated from each other. This alleged infidelity was not proven and therefore not a basis for the breakdown of the marriage.
As to the plaintiffs claim that the defendant sold pool cues and equipment in violation of the courts automatic order. The Court concludes that one of the defendant's clandestine business operations was to sell pool equipment. The Court finds that the sale of cue sticks to support the family and/or himself after separation was not in violation of the automatic orders.
The plaintiff also claimed that the defendant owes child support retroactive to February 15, 1999 and alimony retroactive to March 17, 1999 per order of the Court on May 4, 1999. The Court hereby finds that the defendant's earning capacity has varied from $225-$150 per week from February 15, 1999 to the date of this decision based upon testimony of experts, Carol Whelan, Dr. Pellett and financial affidavits filed by the defendant on May 4, 199 and the date of trial. Conn. Gen. Stat. § 46b-84 (d). The Court further finds that the defendant shall pay no alimony to the wife from March 17, 1999 to the date of the judgment based upon his limited earnings and/or earning capacity and the plaintiffs earnings for said period.
The Court has considered all of the statutory factors concerning custody and visitation set out in Connecticut General Statutes §§ 46b-56, 46b-56a and 46b-59 and has reviewed the testimony of the family relations officer and her evaluation. (Plaintiff Exhibit 21). The Court has considered all of the factors in Connecticut General Statutes §§ 46-56, 46b-59,46b-81, 46b-82, 46b-83, 46b-89 and 46b-62
and other pertinent statutes, tax implications, earnings and earning capacity differential causes for the breakdown of the marriage and the consequences of the financial awards set forth below. The Court, with jurisdiction in this matter finds that the statutory stays have expired and the facts set out in the complaint are proven true. Judgment shall enter dissolving the marriage of the parties on the ground of irretrievable breakdown. It is further ordered that: CT Page 13625
1. Custody.
Sole custody of the minor child, Joseph Michael Sobowitz, born August 10, 1999 is awarded to the plaintiff mother. The defendant father is awarded specific visitation rights as follows:
 (a) Until defendant obtains suitable housing of his own, he shall have visitation with the minor child every Monday and Wednesday from 3:30 p. m. until 7:00 p. m. Defendant shall pick up the child from daycare at 3:30 p. m. and drop him off at the end of the driveway of plaintiff's residence at 7:00 p. m. Defendant shall have alternate Fridays from 3:30 p. m. until 8:00 p. m. Pick up and drop off shall be the same as for Mondays and Wednesdays. Defendant shall have alternate Sundays from 11:00 a.m. until 7:00 p. m. Pick up and drop off shall be at the end of the driveway of plaintiff's residence.
 (b) Upon Defendant obtaining suitable housing which presumably will be in reasonable proximity to plaintiff's residence, (i.e., within 1/2 hour travel time) he shall have visitation time with the child as follows:
 (i) Alternate weekends from after school or daycare on Friday, when he shall pick up the child until 7:30 p. m. on Sunday, when he shall return the child to the end of the driveway at plaintiff's residence.
 (ii) Every Tuesday evening from after school or daycare, when he shall pick up the child until 7:00 p. m. when he shall return the child to the end of the driveway at plaintiff's residence.
 (iii) Alternate Thursday evenings, to be prior to defendant's non-weekend with Joey, from after school or daycare when he shall pick up the child until 7:00 p. m. when he shall return the child to the end of the driveway at plaintiff's residence.
(c) Holidays.
 (i) The parties shall alternate major holidays as CT Page 13626 follows: New Years Day, 2000; President's Day, 2000; Good Friday, 2000; July 4th, 2000; Thanksgiving, 1999; and Christmas Day, 1999 shall be with plaintiff with defendant having visitation the same holidays in alternating years.
 (ii) Martin Luther King Day, 2000; Easter, 2000; Memorial Day, 2000; Halloween evening, 1999; Columbus Day, 1999; and Christmas Eve, 1999 visitation shall be with defendant, with plaintiff having the same holidays in alternating years.
 (iii) Plaintiff shall annually enjoy mother's day and defendant shall annually enjoy visitation father's day. The defendant shall have visitation with the child on his birthday, with plaintiff to have the child on her birthday. The parties shall alternate visitation and access on child's birthday beginning with defendant in 1999.
 (iv) If a major holiday falls on a Monday immediately following the same parent's weekend, the child shall remain with that parent through Monday at 8:00 p. m. If not, all holidays shall be from 9:00 a.m. until 8:00 p. m. with the following exceptions: Halloween evening shall be from after school until 8:30 p. m.; Easter shall begin at 7:30 p. m. Saturday night and end Easter Sunday at 7:30 p. m.; Christmas Eve (12/24) shall be from 5:00 p. m., until noon the next day (12/25) and Christmas Day shall be from noon (12/25) until noon on December 26.
 (v) All legal holidays not herein addressed are to be spent on an alternating annual basis with each parent, to attach, whenever possible, to the immediately preceding weekend with the same parent.
(d) School Vacations.
 The child currently attends a school which has a Christmas, Winter and Spring vacation break. Spring and Winter school vacation weeks are to be spent with each parent on alternating years beginning with Spring to plaintiff in 2000 and Winter to defendant in 2000. CT Page 13627 Spring and Winter vacation shall commence immediately after school recesses and the vacation shall continue until Sunday, 7:00 p. m. prior to school resuming. Christmas vacation shall be interrupted for Christmas Eve/Day access as hereinbefore defined. Otherwise, Christmas vacation shall be equally divided by the parties.
(e) Summer Vacation.
 Each party shall be entitled to two (2) weeks of summer access visitation, to be taken consecutively or nonconsecutively. Summer schedules shall be exchanged no later than April 15, 1999 and shall take into consideration camp schedules and the like. In the event of a conflict, plaintiff's preference shall prevail in even years and defendant's preference shall prevail in odd years.
 (f) The parties shall exert every reasonable effort to maintain free access and to foster feelings of love and respect between the child and the other parent. Neither parent shall do anything which may estrange the child from the other parent, create unreasonable expectations in the child about the future relationship(s) of his mother and father, mislead the child as to the continuing role of either parent, injure the child's opinion of his mother or father nor act in such a way as to hamper the free and natural development of the child's love and respect for the other party.
 (g) The plaintiff shall continue to utilize Dr. Daniel Affronte as Joey's mental health provider. Dr. Daniel Affronte's role shall be therapeutic and advisory. The cost of Dr. Affronte's counseling shall be divided by the parties after payments received from health insurance, based upon percentages for unreimbursed health care expenses, for a period of one year from the date of this judgment. Any further therapy or payment order shall be by further motion and order of the court.
 (h) Neither parent shall coerce, threaten, harass, intimidate, discourage or in any way deny the child reasonable access to the other parent. Access shall include, but not be limited to telephoning, writing by CT Page 13628 letter or E-mail or receiving telephone calls or letters or E-mail from either parent. Both parties shall maintain answering machines or similar devices and shall promptly return phone calls made to each other or to or from Joe, provided the calls are reasonable in time and there exists a reasonable opportunity to return calls.
 (i) Each party shall be entitled to complete, detailed information from any pediatrician, physician, dentist, therapist, consultant, teacher, daycare provider, guidance counselor, or specialist attending the child for any reason whatsoever and to be furnished with copies of any reports given by any of the aforementioned to the other parent. Each parent shall first attempt to obtain said reports directly from the provider prior to contacting the other parent and seeking his or her assistance in obtaining said reports.
 (j) The plaintiff shall not schedule any after school athletic, medical, extracurricular or other events during the time the child is visiting with the defendant pursuant to the terms of this judgment and the defendant shall not schedule the child for after school athletic, extracurricular or other events during the time he is scheduled to be with the plaintiff.
 (k) Neither party shall permanently remove the child from the State of Connecticut absent mutual agreement or further order of the Court. Any party seeking to permanently remove the child outside of the State of Connecticut shall give the other party at least ninety (90) days advance written notice.
2. Health Insurance for the Minor Child. The mother shall maintain health insurance on behalf of Joey as is available through her place of employment, or its reasonable equivalent for the minor child.
3. Counsel Fees for Counsel for the Minor Child. The parties were previously ordered to pay counsel for the minor child Jeffrey D. Mickelson the sum of $1,750.00 as a retainer with each party paying one-half (1/2) of said amount. The plaintiff has paid $2,128.75 while the defendant has paid $191.25 to date. The court orders the parties to pay the counsel fees in the total amount of $19,572.334 which amount was stipulated by the parties. CT Page 13629 The defendant shall pay the balance of his portion of the retainer ($750-$191.25) in the amount of $558.75 within 6 months of the date of this judgment. The balance of counsel fees for the minor child's attorney ($19,572.25-$2,878.75) in the amount of $16,693.35 shall be paid from the sale of the coin collection listed on plaintiffs financial affidavit, USAA gold fund #003961776 and Titan Values Equity Group listed on plaintiff's affidavit. Any balance due after liquidation of the coin collection shall be paid 1/3 by the defendant and 2/3 by the plaintiff.
4. Child Support: The defendant shall pay child support to the plaintiff in the amount of $12.00 per week based upon his present gross earnings of $150.00 per week and the plaintiffs gross weekly earnings. Commencing March 15, 2000, the defendant shall pay to the plaintiff the sum of $78.00 per week based upon the courts finding that the plaintiff shall have an earning capacity of $26,000 within six months based upon facts found from evidence presented in the record. The plaintiff shall pay the first one hundred dollars of unreimbursed and uncovered medical, dental, psychiatric, psychologist, therapy, dental, optical and/or opthamalogist expense for the minor child and the plaintiff shall pay 89% and the defendant shall pay 11% for the balance of any unreimbursed and uncovered expenses through February 2000. Commencing March 15, 2000, the plaintiff shall pay 73% and the defendant shall pay 27% for the balance of unreimbursed and uncovered expenses for the minor child and the plaintiff shall pay 73% and the defendant shall pay 23% of child care expenses for daycare for the minor child.
5. Alimony: No alimony is awarded to either party.
6. Tax Exemption: The plaintiff shall have the right to take the minor child as a tax exemption for federal and state income taxes commencing calendar year 1999.
7. COBRA: The defendant, at his sole option and expense shall obtain health insurance benefits through the plaintiffs health insurance as provided by COBRA. The plaintiff is ordered to cooperate and sign any and all documents necessary to assist the defendant in obtaining said coverage.
8. Real Estate: The defendant shall quitclaim all of his right, title and interest in and to the marital residence located at 97 Highiand Street, Rocky Hill, Connecticut to the plaintiff. CT Page 13630 The plaintiff shall pay and hold the defendant harmless from any liability on the mortgage, taxes and insurance on said premises. The plaintiff is further ordered to execute a promissory note secured by a second mortgage deed on the premises in the amount of $22,500 payable without interest on the first of the occasion of the following events: (1) March 1, 2005; (2) death of wife; (3) sale of house; (4) cohabitation by plaintiff as defined in46b-86 (b) of the Connecticut General Statutes. Any arrearage in child support from the date of this judgment until March 1, 2000 may be deducted from the amount owed by the defendant.
9. Personal Property
The plaintiff shall have all right, title and interest in and to her grandmother's white diamond ring and shall pay for any balance due to the jeweler who reset the stone at the request of the defendant. The plaintiff shall have all right, title and interest in and to her grandfather's ruby ring if located by either party and all other personal property located at the marital residence including jewelry presently in his possession with the exception of the following: (1) the defendants clothes and personal effects; (2) his remaining billiard equipment including his pool cue collection, his pool ball collection, his pool table and accessories; (3) tools and tool box; (4) personal papers and records; (5) stereos; and (6) his CDs.
10. Savings Bonds: The savings bonds in the amount of $6,000.00 as testified by the defendant in his possession and any other savings bonds purchased prior to the date of the judgment in the minor child's name located by either party shall be transferred to the plaintiff who shall hold them in trust for the educational needs of the minor child.
11. Automobile: The plaintiff shall be awarded all right, title and interest in and to the 1993 Volkswagen Passat and she shall pay and hold the defendant harmless from any liability on the car loan. The defendant shall have all right, title and interest in and to the 1985 Chrysler Laser and 1990 Saab automobiles.
12. Life Insurance: The plaintiff and defendant shall maintain any life insurance available at their present and/or future places of employment with the child as beneficiary until the obligation to support the minor child terminates by operation of law or by the provisions of this judgment. CT Page 13631
13. Bank Accounts: The plaintiff shall have all right, title and interest in and to the bank accounts presently in her name and the defendant shall have all right, title and interest in and to all bank accounts presently in her name.
14. IRA's: The plaintiff and defendant shall have all right, title and interest in and to his or her own IRA plan.
15. Pension Plans: The plaintiff shall have all rights, title and interest in and to her retirement benefits at Hartford Hospital.
16. Counsel Fees: Each party shall pay his or her own counsel's legal fees, expenses and costs.
17. Liabilities and Debts: The plaintiff shall pay any debts owed to her brother, David Ramer, step-father, Tony Rinaldi and her legal counsel, Attorney Flaherty. The defendant shall pay the debts owed by him to Attorney Louis Kiefer; Attorney Cantin and Morris; Attorney Harvey; Paul Poteky; Maryanne Cyherlone; Fran Ramer; Helen Sobowitz; Veteran's Home; Dr. Barnett; Shoflick; Bank Card Services VISA and American Express.
18. IRS Refund: The IRS refund for calendar year 1998 of $6,400 shall be divided equally by the parties.
19. Restraining Orders: the defendant is hereby restrained from entering the residence of the plaintiff and further shall not threaten, harass or annoy the plaintiff and shall not physically assault and/or molest the plaintiff.
20. Restoration of Maiden Name: The plaintiff's birth name of Ramer is hereby restored.
21. Arrearage: The court finds that the defendants earning and/or earning capacity since February 15, 1999 varied from $225.00 to $150.00 per week based upon testimony from Dr. Pellett and Dr. Carol Whelan; and financial affidavits filed by Defendant on May 4, 1999 and date of trial. The child support arrearage from February 15, 1999 to date of judgement based upon a child support obligation of $15.00 per week totaling $495.00. Said amount shall be paid in full by the defendant to the plaintiff on or before October 1, 2000. CT Page 13632
Devine, J.